United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   STEVEN DEAN WOLFE            )   No. C 05-4264 MMC (PR)
                                  )
12          Plaintiff,            )   **ORDER GRANTING DEFENDANTS'**
                                  )   **MOTIONS FOR SUMMARY**
13      v.                        )   **JUDGMENT**
                                  )
14   WILLIAM COGBILL; DR. BROWN;  )
     L. ERSKINE; N. BELOBERK,     )   (Docket Nos. 16, 26, 28)
15                                )
            Defendants.           )
16   _____ )

17          On October 20, 2005, plaintiff Steven Dean Wolfe, a California prisoner proceeding

18   pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983 against officials of the

19   Sonoma County Jail (hereafter "Jail"), where plaintiff was formerly housed.  On

20   December 20, 2005, after liberally construing the complaint, the Court found plaintiff had

21   stated cognizable claims against four employees of the Jail: Sheriff William Cogbill

22   ("Cogbill"), Lieutenant Officer L. Erskine ("Erskine"), Officer N. Beloberk ("Beloberk"),

23   and a jail dentist, Dr. Ronni Brown ("Dr. Brown").  Plaintiff claims said defendants were

24   deliberately indifferent to his serious medical needs in connection with the treatment of his

25   wisdom tooth.

26          Cogbill, Erskine and Beloberk have filed a joint motion for summary judgment, and

27   Dr. Brown has filed a separate motion for summary judgment, in each instance contending

28   there is no genuine issue of material fact as to the issue of deliberate indifference.  Plaintiff

1   has filed an opposition to both motions, and defendants have filed replies.

2                                    **BACKGROUND**

3   A.      Plaintiff's Claim

4          In his complaint, plaintiff makes the following allegations:

5          On February 25, 2004, plaintiff cracked his wisdom tooth.  That same date, Dr.

6   Brown, a dentist at the Jail, examined plaintiff and found he needed to have the tooth

7   extracted, which could only be done outside the jail by an oral surgeon.  Dr. Brown informed

8   plaintiff that he would have to pay for the extraction and transportation to the oral surgeon, in

9   the combined amount of $288.  Plaintiff did not have the funds to cover the costs.  Plaintiff

10  filed administrative appeals requesting that the Jail pay for the extraction and transportation,

11  which appeals were denied by defendants Beloberk and Erskine.

12  B.      Defendants' Evidence

13         In support of their summary judgment motions, defendants have filed declarations and

14  medical records demonstrating the following:

15         In July 2002, during a previous incarceration at the Jail, plaintiff complained that one

16  of his wisdom teeth ("tooth #16") was sensitive and contained a hole.  (Brown Decl. ¶ 2;

17  Decl. of Custodian of Records filed January 27, 2006 (hereafter "Dagey Decl.") Ex. A-1.)

18  Dr. Brown examined plaintiff and found the tooth had some decay but no hole, that the

19  surrounding gum tissues were pink and non-tender, that there was no abscess, and that

20  plaintiff had normal ability to open his mouth.  (Brown Decl. ¶ 3; Dagey Decl. Ex. A-1.)  Dr.

21  Brown recommended the tooth be removed, but, due to its anatomical location, only by an

22  oral surgeon  (Brown Decl. ¶ 3; Dagey Decl. Ex. A-1.)  She further told plaintiff he would

23  have to arrange and pay for the extraction because the condition was "chronic," and there

24  were "no signs of infection, pain, systemic involvement or any difficulty in [plaintiff's]

25  opening his mouth."  (Brown Decl. ¶ 3; Dagey Decl. Ex. A-1.)  She also informed plaintiff

26  that he had a right to be seen by an oral surgeon of his choice.  (Brown Decl. at ¶¶ 5-6.)

27          Plaintiff was released from custody on February 1, 2003; he was returned to custody

28  on March 23, 2003.  (Beloberk Decl. ¶ 2.)  On April 14, 2003, plaintiff complained of pain in

United States District Court

For the Northern District of California

2

United States District Court

For the Northern District of California

1    tooth #16, and was examined by Dr. Brown. (Brown Decl. ¶ 7; Dagey Decl. Ex. A-2.)

2    Plaintiff told Dr. Brown he had been released from custody following her last examination of

3    him, and that although he had $2200 in his jail account at the time of his prior incarceration,

4    he chose not to use it for dental care. (Brown Decl. ¶ 7; Dagey Decl. Ex. A-2.) He also told

5    Dr. Brown that during the time he was out of custody, he visited Santa Rosa Memorial

6    Hospital for treatment of his tooth, and was told to find a dentist and to use over-the-counter

7    pain medication to address the pain  (Brown Decl. ¶ 8; Dagey Decl. Ex. A-2); plaintiff

8    obtained the pain medication, which alleviated the pain, but did not seek dental care (Brown

9    Decl. ¶ 8; Dagey Decl. Ex. A-2). In her examination of tooth #16, Dr. Brown found no facial

10    swelling and no swelling inside plaintiff's mouth; the tissues in plaintiff's mouth were pink,

11    plaintiff could open his mouth within a normal range, and there remained decay on the tooth.

12    (Brown Decl. ¶ 9; Dagey Decl. Ex. A-2.) Dr. Brown prescribed Penicillin to prevent any

13    infection and Elavin and Naprosyn for pain relief; she also instructed plaintiff to contact

14    medical or dental staff if the symptoms became acute. (Brown Decl. ¶ 9; Dagey Decl. Ex. A-

15    2.) Dr. Brown again recommended that plaintiff have the tooth extracted by an oral surgeon,

16    but, as the tooth still presented no signs of a "systemic medical threat to [plaintiff's] well

17    being," she again told him he would have to arrange and pay for the surgery himself, and that

18    he had the right to be seen by a surgeon of his choosing. (Brown Decl. ¶¶ 9-10; Dagey Decl.

19    Ex. A-2.)

20      On February 25, 2004, plaintiff reported to a jail guard that he had broken tooth #16,

21    and was promptly escorted to see Dr. Brown. (Fernandez Decl. ¶ 2; Jensen Decl. ¶¶ 2-3.) He

22    explained to Dr. Brown that he had not had the tooth removed during his release from

23    custody in 2003 because he had gotten married and spent $6000 traveling to Maui, Hawaii.

24    (Brown Decl. ¶ 11; Dagey Decl. Ex. A-3.) Dr. Brown X-rayed the tooth and found it was

25    fractured, but that plaintiff's gums were not tender, bleeding or swollen, and there was no

26    abscess. (Brown Decl. ¶ 12; Dagey Decl. Ex. A-3.) Again, as there was "no medical

27    problem associated with the tooth," Dr. Brown advised plaintiff the extraction would be on

28    the basis of "self-referral," and gave him an estimate of $200 for the surgery and $88 for the

3

1   transportation.  (Brown Decl. ¶ 12; Dagey Decl. Ex. A-3.)  Additionally, Dr. Brown

2   prescribed Tylenol and Motrin three times a day for 14 days, for pain relief and to guard

3   against possible inflammation, as well as a course of Penicillin to prevent any future

4   infection.  (Brown Decl. ¶ 12; Dagey Decl. Ex. A-3.)

5          On April 3, 2004, plaintiff submitted to Dr. Brown a note requesting a cost estimate

6   for the extraction; in reply, Dr. Brown again estimated $200.  (Dagey Decl. Ex. A-4.)  On

7   April 20, 2004, plaintiff filed a grievance stating the tooth was hurting him and requesting

8   that it be extracted at the Jail's expense.  (Beloberk Decl. ¶ 5, Ex. A.)  Plaintiff was informed

9   he could see medical staff to address his pain, but that the requested extraction was denied.

10  (Beloberk Decl. Ex. A.)  The following day, April 21, 2004, plaintiff complained to medical

11  staff that he was experiencing pain, and, on April 22, 2004, a doctor prescribed Motrin for

12  him.  (Dagey Decl. Ex. A.)[1]  Also on April 21, plaintiff appealed the denial of his grievance

13  to Beloberk, who consulted with the Jail's medical administrator, Michael Dagey, and

14  learned from him that Dr. Brown had determined there was no need for immediate extraction

15  because plaintiff's condition was not an emergency, there was no infection, and plaintiff had

16  no difficulty opening his mouth or eating.  (Beloberk Decl. ¶ 6, Ex. A.)  Dagey also informed

17  Beloberk plaintiff had been given medication for his pain.  (Id.)  On April 23, 2004, Beloberk

18  denied the appeal on the basis of the information Dagey had provided.  (Beloberk Decl. ¶ 7,

19  Ex. A.)  On April 24, 2004, plaintiff appealed Beloberk's decision to Erskine, who denied the

20  appeal.  (Erksine Decl. ¶ 2; Beloberk Decl. ¶ 8, Ex. A.)

21         On May 5, 2004, plaintiff was examined by Dr. Brown for further complaints about

22  tooth #16.  (Brown Decl. ¶ 16; Dagey Decl. Ex. A-7.)  Dr. Brown found the decay had

23  progressed, the gums were tender to touch, and there was slight redness.  (Brown Decl. ¶ 17;

24  Dagey Decl. Ex. A-7.)  There was no evidence of any infection, however, as no abscess or

25  swelling was present, and plaintiff could open his mouth to a normal extent with ease.

26  (Brown Decl. ¶ 17; Dagey Decl. Ex. A-7.)  Plaintiff reiterated his claim that he could not

27  _____

28      [1]The relevant entry can be found at the eighth unnumbered page from the end of the
    exhibit.

United States District Court

For the Northern District of California

afford to pay for the surgery, and, although Dr. Brown was still of the opinion that plaintiff's dental needs were not emergent in nature, she referred him to an oral surgeon for an extraction at the expense of Sonoma County.  (Brown Decl. ¶¶ 17-19; Dagey Decl. Ex. A-7.) This referral was "above and beyond" the "emergency and medically required dental care" mandated for inmates by 15 Cal. Code Regs. § 1215.  (Brown Decl. ¶ 18.)  The following day, May 6, 2004, plaintiff's tooth #16 was extracted outside the Jail, without complication, by Dr. Paul Tiernan, who reported to Dr. Brown that no abscesses were found.  (Brown Decl. ¶ 20.)

Thereafter, Cogbill received from plaintiff a letter sent on or about April 29, 2005, claiming plaintiff was not receiving the dental care he needed.  (Cogbill Decl. ¶ 2.)  The letter had been forwarded to Cogbill "via the Detention Division chain of command"; by the time it came to Cogbill's attention, plaintiff already had been referred to an outside oral surgeon and surgery had been performed.  (Id.)

C.    Plaintiff's Evidence

Plaintiff has submitted declarations and medical records as evidence in support of his opposition, which evidence does not differ from the foregoing account by defendants, other than to add the following:

On February 25, 2004, when Dr. Brown gave him the estimate of $288, plaintiff told her he only had $20 in his jail account and that he did not have family or friends who could pay for the surgery.  (Wolfe Decl. ¶ 4.)  Dr. Brown told him that he should have spent some of his money to fix his tooth instead of on the trip to Hawaii.  (Wolfe Decl. ¶ 5.)  Following plaintiff's February 25, 2004 appointment, his tooth was causing him "to be in pain and stopping him from daily activit[ies] such as eating, sleeping, talking, etc."  (Wolfe Decl. ¶ 7.) On April 27, 2004, Laura Rodriguez, a Jail nurse, saw plaintiff because he was complaining about his tooth hurting, and she requested that Dr. Brown reassess plaintiff's condition. (Wolfe Decl. ¶ 10.)  Around that same time, plaintiff also wrote Cogbill a letter, stating he was being denied necessary dental treatment based on his inability to pay for it.  (Wolfe Decl. ¶ 11.)  On May 5, 2004, plaintiff received a memorandum from Beloberk, informing him that

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   Dr. Brown had decided to refer him to an oral surgeon for extraction, which would be

2   performed at the Jail's expense. (Id.) The following day, after the extraction had been

3   performed, plaintiff requested that the tooth be kept and made available to his wife, who

4   picked it up on May 8, 2004. (Wolfe Decl. ¶ ¶ 17-18.) She took pictures of the tooth, copies

5   of which are attached to plaintiff's opposition.

6       Plaintiff's wife, Erin Lynn Wolfe, was plaintiff's "so[le] means of funds while he was

7   in the Sonoma County Jail from October 2003 to June 2004 and at no point did [she] or could

8   [she] have deposited more than $40.00 on his Trust Account." (Erin Wolfe Decl. ¶ 3.)

9   Between February 25 and May 5, 2004, she observed swelling in plaintiff's face, weight loss,

10  and that plaintiff was in pain. (Id. ¶¶ 6, 9.)

11  D.     Defendants' Reply Evidence

12      In connection with their reply, Cogbill, Erskine and Beloberk submitted a declaration

13  by the Information Bureau Manager of the Sonoma County Sheriff's Department, (Brubaker

14  Decl. ¶ 1), who attaches thereto a list of deposits made to plaintiff's Jail account between

15  October 13, 2003 and May 31 2004. (Brubaker Decl. ¶ 2, Ex. A). The list shows deposits to

16  plaintiff's account totaling approximately $1400 for the period October 13, 2003 through

17  February 24, 2004. Included therein are an $800 deposit by "Erin Lynn Wolfe" on

18  October 31, 2003, a $200 deposit by "Erin Lynn Wolfe" on December 20, 2003, as well as

19  numerous smaller deposits by "Erin Lynn Wolfe," "Mama Lynn Wolfe," "Mama Lynn," and

20  "Martin Wolfe." (Brubaker Decl. Ex. A.)

21                          **DISCUSSION**

22  A.     Legal Standard

23      Summary judgment is proper where the pleadings, discovery and affidavits show there

24  is "no genuine issue as to any material fact and that the moving party is entitled to judgment

25  as a matter of law." See Fed. R. Civ. P. 56(c). Material facts are those that may affect the

26  outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A

27  dispute as to a material fact is genuine if the evidence is such that a reasonable jury could

28  return a verdict for the nonmoving party. See id.

United States District Court

For the Northern District of California

1    The court will grant summary judgment "against a party who fails to make a showing

2 sufficient to establish the existence of an element essential to that party's case, and on which

3 that party will bear the burden of proof at trial . . . since a complete failure of proof

4 concerning an essential element of the nonmoving party's case necessarily renders all other

5 facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also

6 Anderson v. Liberty Lobby, 477 U.S. at 248 (holding fact is material if it might affect

7 outcome of suit under governing law; further holding dispute about material fact is genuine

8 "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

9 party"). The moving party bears the initial burden of identifying those portions of the record

10 that demonstrate the absence of a genuine issue of material fact. The burden then shifts to

11 the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the

12 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts

13 showing that there is a genuine issue for trial.'" See Celotex, 477 U.S. at 324 (citing Fed. R.

14 Civ. P. 56(e)).

15    For purposes of summary judgment, the judge must view the evidence in the light

16 most favorable to the nonmoving party; if evidence produced by the moving party conflicts

17 with evidence produced by the nonmoving party, the court must assume the truth of the

18 evidence submitted by the nonmoving party. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158

19 (9th Cir. 1999). The court's function on a summary judgment motion is not to make

20 credibility determinations or weigh conflicting evidence with respect to a disputed material

21 fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

22 1987).

23 B.    Claims

24    Deliberate indifference to a prisoner's serious medical needs violates the Eighth

25 Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble,

26 429 U.S. 97, 104 (1976). Serious medical needs may include dental care. Hunt v. Dental

27 Dep't, 865 F.2d 198, 200 (9th Cir. 1989).

28    A determination of "deliberate indifference" involves an examination of two elements:

United States District Court
For the Northern District of California

1  the seriousness of the prisoner's medical need and the nature of the defendant's response to

2  that need.  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other

3  grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

4  A "serious" medical need exists if the failure to treat a prisoner's condition could result in

5  further significant injury or the "unnecessary and wanton infliction of pain."  Id. (citing

6  Estelle v. Gamble, 429 U.S. at 104).  Indications that a prisoner has a "serious" need for

7  medical treatment include the existence of an injury that a reasonable doctor or patient would

8  find important and worthy of comment or treatment, the presence of a medical condition that

9  significantly affects an individual's daily activities, and the existence of chronic and

10 substantial pain.  Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th

11 Cir. 1990)).  A prison official is deliberately indifferent if he knows that a prisoner faces a

12 substantial risk of serious harm and disregards that risk by failing to take reasonable steps to

13 abate it.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be

14 aware of facts from which the inference could be drawn that a substantial risk of serious

15 harm exists," but he "must also draw the inference."  Id.  If a prison official should have been

16 aware of the risk, but was not, the official has not violated the Eighth Amendment, no matter

17 how severe the risk.  Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

18 Consequently, in order for deliberate indifference to be established, there must exist both a

19 purposeful act or failure to act on the part of the defendant and harm resulting therefrom.  See

20 McGuckin, 974 F.2d at 1060.

21        1.    Dr. Brown

22        Plaintiff claims Dr. Brown was deliberately indifferent to his serious medical needs on

23 February 25, 2004, by failing to order the extraction of plaintiff's tooth at no charge when he

24 informed her that he could not pay for it himself.[2]  Plaintiff has failed to raise a genuine issue

25

26        [2]There is conflicting evidence with respect to plaintiff's ability to pay the $288 for the
27 extraction on February 25, 2004, as well as whether Dr. Brown was apprised of his ability to
   do so.  In his declaration, plaintiff states he told Dr. Brown that he could not pay for the
28 surgery, and that he had no more than $20 in his trust account.  (Wolfe Decl. ¶ 4.)  As
   discussed above, defendants present substantial documentary evidence to the contrary.  For

8

United States District Court

For the Northern District of California

1  of material fact, however, as to whether Dr. Brown's treating plaintiff's tooth with

2  medication, as opposed to immediate extraction, presented a "substantial risk of serious

3  harm" to plaintiff.

4        When Dr. Brown examined plaintiff on February 25, 2004, plaintiff's gums were not

5  tender, bleeding or swollen, there was no abscess, and plaintiff could open his mouth within a

6  normal range.  Dr. Brown prescribed Penicillin and anti-inflammatory medication to prevent

7  any infection from arising.  With respect to the pain plaintiff was experiencing, Dr. Brown

8  prescribed painkillers, and there is no evidence, nor does plaintiff claim, this medication

9  failed to adequately address the pain he was experiencing at that time.[3]  The evidence

10  indicates the treatment prescribed by Dr. Brown did not in fact lead to any "serious harm" to

11  plaintiff: ten weeks later, on May 5, 2004, although there was "slight" redness and

12  tenderness, there was still no infection, swelling or abscess, and plaintiff could still open his

13  mouth within a normal range.  The fact that Dr. Brown at that time referred plaintiff for an

14  extraction at County expense does not indicate she should have done so earlier.  Indeed, it

15  remained her opinion that, given the absence of severe symptoms and the absence of any

16  threat to plaintiff's health, there was no need for immediate extraction, and the referral was

17  "above and beyond" the state mandated "emergency and medically required dental care."

18  The record contains no evidence that Dr. Brown's opinion on this point was medically

19  unsound.  The lay opinion of plaintiff and his wife to the contrary is not sufficient to raise a

20  triable issue.  "A difference of opinion between a prisoner-patient and prison medical

21  authorities regarding treatment does not give rise to a § 1983 claim."  Franklin v. Oregon,

22  662 F.2d 1337, 1344 (9th Cir. 1981); see Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th

23  

24  purposes of the instant motion, however, the Court draws all inferences in plaintiff's favor, and thus assumes plaintiff did not have the funds to pay for the surgery and that Dr. Brown

25  was aware of this.

26      [3]The evidence is undisputed that after evaluating plaintiff on February 25, 2004, Dr. Brown did not learn plaintiff was again in pain until she saw him on May 5, 2004, at which

27  time she referred him for surgery at no cost to himself.  After February 25, plaintiff did not again complain of pain to Jail officials until his April 20 grievance.  There is no evidence Dr.

28  Brown knew about this grievance.  Moreover, in immediate response to the grievance, Jail medical staff provided plaintiff with a prescription for additional pain medication.

1    Cir. 2004).

2         Further, the undisputed evidence, even viewed in the light most favorable to plaintiff,

3    does not support a finding of deliberate indifference.  As soon as plaintiff complained to jail

4    officials that his tooth was cracked, he was brought to see a dentist, Dr. Brown, who x-rayed

5    his mouth, located the cracked tooth and found no sign of infection or other threat to

6    plaintiff's health associated with the condition of his tooth.  She recommended extraction,

7    but in her medical opinion, there was no urgency in that regard.  She prescribed Penicillin as

8    a precaution against future infection, and pain medication for the symptoms plaintiff was

9    experiencing.  When plaintiff later complained to other officials that his tooth was hurting, he

10   obtained additional pain medication.  Although still of the opinion that plaintiff's tooth

11   presented no immediate need for surgical intervention, Dr. Brown thereafter referred plaintiff

12   for an extraction at County expense, which surgery was performed without complication the

13   following day.

14        In sum, plaintiff has failed to raise a genuine issue of material fact as to whether Dr.

15   Brown's decision not to order a tooth extraction at County expense on February 25, 2004

16   presented a substantial risk of serious harm to plaintiff, or that she was deliberately

17   indifferent to his serious medical needs.  Accordingly, Dr. Brown is entitled to summary

18   judgment on plaintiff's claim against her.

19              2.      Defendants Beloberk and Erskine

20        Plaintiff claims Beloberk and Erskine were deliberately indifferent to his serious

21   medical needs by denying his requests for a free tooth extraction, as presented in his

22   administrative appeals.  Neither Beloberk nor Erskine is a medical or dental professional,

23   and, consequently, did not have the expertise to question Dr. Brown's judgment with respect

24   to whether there was an emergent need for extraction, or to question the treatment she was

25   providing.  More importantly, for the reasons described above, there is no genuine issue of

26   material fact as to whether the decision not to order immediate extraction presented a

27   "substantial risk of serious harm" to plaintiff.  Accordingly, Beloberk and Erksine are

28   entitled to summary judgment on plaintiff's claim against them.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    3.    Sheriff Cogbill

2    The only evidence presented with respect to Sheriff Cogbill's involvement in the

3  treatment of plaintiff's tooth is that plaintiff wrote him a letter on April 29, 2004, seeking to

4  obtain an extraction at the Jail's expense.  Cogbill's declaration that he did not see this letter

5  until after the tooth had already been extracted is undisputed by plaintiff.  Cogbill cannot be

6  found to have been deliberately indifferent in failing to grant a request of which he was

7  unaware until after it already had been granted.  Consequently, plaintiff has failed to raise a

8  genuine issue of material fact as to whether Cogbill was deliberately indifferent to plaintiff's

9  serious medical needs and Cogbill likewise is entitled to summary judgment.

10                                      **CONCLUSION**

11    For the reasons stated above, defendants' motions for summary judgment are, in each

12  instance, GRANTED.

13    This order terminates Docket Nos. 16, 26, and 28.

14    The Clerk shall close the file.

15    IT IS SO ORDERED.

16  DATED: September 29, 2006

17                                        _____
                                          MAXINE M. CHESNEY
18                                        United States District Judge

19

20

21

22

23

24

25

26

27

28